TYSON, Judge.
*546 Robert Bishop ("Defendant") appeals from judgment entered after a jury convicted him of one count of cyber-bullying. We find no error in Defendant's conviction or the judgment entered thereon.
I. Factual Background
Dillion Price ("Dillion") was a sophomore at Southern Alamance High School in Alamance County, North Carolina during the 2011-2012 school year. In September 2011, Dillion's classmates began posting negative comments and pictures of him on his Facebook page. Dillion received notification on his cell phone after any Facebook comment was posted about him.
Defendant, one of Dillion's classmates, posted several comments about Dillion, which included posts calling him "homophobic" and "homosexual," and that he was "slamming someone on the open forum that is the internet." Defendant also stated "he never got the chance to slap [Dillion] down before Christmas break." Defendant made *547 additional comments rife with vulgarity, discussed further in the State's evidence, below.
Late one night in December 2011, Dillion's mother found him crying, punching his pillow, beating himself in the head, and throwing things in his room. Dillion's mother confiscated his cell phone as punishment for being awake so late on a school night. After looking at his phone, Dillion's mother discovered the "derogatory comments," which had upset Dillion, and contacted local law enforcement. Dillion's mother brought several print-outs of the Facebook conversations to Alamance County Sheriff's Detective David Sykes ("Detective Sykes").
Detective Sykes began an investigation and used undercover Facebook profiles to search for posts and comments in which Dillion was mentioned. Detective Sykes testified "[w]henever [he] found anything that appeared to have been ... cyber-bullying [he] took a screen shot of it."
*341 Detective Sykes compiled a list of names during his investigation. He went to Southern Alamance High School to interview the students on his list on 7 February 2012. Defendant was one of the students he interviewed. Defendant admitted he recognized some of the Facebook comments as his posts.
On 9 February 2012, Defendant was arrested and charged with one count of cyber-bullying under N.C. Gen.Stat. § 14-458.1(a)(1)(d). The warrant alleged Defendant "unlawfully and willfully did use a computer network to, with the intent to intimidate and torment Dillion Price, a minor, post on the Internet private, personal and sexual information pertaining to the above named minor, to wit, commenting on Facebook about his sexual orientation and his intelligence."
Following a trial in Alamance County District Court, Defendant appealed to the superior court for a trial de novo. A jury trial was held in Alamance County Superior Court on 3 February 2014. Defendant exercised his constitutional right not to testify on his own behalf.
A. State's Evidence
The State introduced and published to the jury "screen shots" of three Facebook posts in which Defendant had commented. Detective Sykes also read those posts into evidence at trial. Each screen shot is discussed in turn.
The State's Exhibit 2 consisted of a screen shot Facebook post of a text message Dillion had accidentally sent to another classmate.
*548 Over thirty comments were added by various individuals in reference to the original post. Defendant added the following comments: (1) "This is excessively homoerotic in nature. Exquisite specimen;" (2) "Anyone who would be so defensive over Dillion can't be too intelligent;" (3) "And you are equally pathetic for taking the internet so seriously;" and, (4) "There isn't a fight. We're slamming someone on the open forum that is the internet."
The State's Exhibit 3 contained another screen shot Facebook post of a text message exchanged between Dillion and a classmate. Several students commented they hated Dillion, and one asked, "Can we just kick his ass already?" Defendant commented, "I never got to slap him down before Christmas Break," followed by a "sad face" emotion icon. Another student requested for someone to "tag" Dillion, in order for him to be notified of these posts. Defendant replied, "I'll add him."
The State's Exhibit 4 was a third screen shot Facebook post of text messages exchanged between Dillion and a classmate. The original text message from the classmate included an altered picture of Dillion and his dog. Several students posted vulgar and derogatory comments in response, which insulted Dillion. Defendant posted comments, including: "I heard that his anus was permanently stressed from having awkwardly shaped penises in it" and stated that Dillion's genitals were "probably a triangle."
The jury's verdict found Defendant guilty of one count of cyber-bullying. The trial court imposed a suspended sentence of 30 days in the custody of the Alamance County Sheriff and placed Defendant on supervised probation for a period of 48 months. Defendant gave notice of appeal in open court.
II. Issues
Defendant argues: (1) N.C. Gen.Stat. § 14-458.1(a)(1)(d) is an unconstitutionally overbroad criminalization of protected speech on its face; and, (2) N.C. Gen.Stat. § 14-458.1(a)(1)(d) is unconstitutionally vague on its face. He asserts the statute fails to provide adequate notice of the prohibited speech, lends itself to arbitrary enforcement, and chills protected speech. Defendant also argues N.C. Gen.Stat. § 14-458.1(a)(1)(d) is unconstitutionally vague as applied to him and asserts the statute failed to provide him with adequate notice that his speech was criminal.
Defendant additionally argues the trial court erred by: (1) denying his motion to dismiss for insufficient evidence; (2) permitting Detective Sykes to testify he took a screen shot whenever he came across what *549 appeared to him to be an instance of cyber-bullying; and, (3) admitting into evidence Defendant's statements about Christianity. *342 III. Analysis
A. Overbreadth
This case of first impression requires us to determine whether N.C. Gen.Stat. § 14-458.1(a)(1)(d) criminalizes protected speech under the First Amendment. Defendant argues N.C. Gen.Stat. § 14-458.1(a)(1)(d) is an unconstitutionally overbroad content-based criminalization of protected speech. Defendant asserts the statute criminalizes both the narrow categories of speech historically denied First Amendment protection, as well as a broad array of constitutionally protected speech. We disagree.
1. Standard of Review
This Court reviews the constitutionality of a statute de novo. State v. Whitaker, 201 N.C.App. 190, 192, 689 S.E.2d 395, 396 (2009), aff'd, 364 N.C. 404, 700 S.E.2d 215 (2010). However, "[w]hen examining the constitutional propriety of legislation, we presume that the statutes are constitutional, and resolve all doubts in favor of their constitutionality." State v. Mello, 200 N.C.App. 561, 564, 684 S.E.2d 477, 479 (2009) (citation and internal quotation marks omitted), aff'd, 364 N.C. 421, 700 S.E.2d 224 (2010).
If a statute contains both constitutional and unconstitutional provisions, we sever the unconstitutional provision and uphold the constitutional provisions to the extent possible. Fulton Corp. v. Faulkner, 345 N.C. 419, 422, 481 S.E.2d 8, 10 (1997) (citations omitted). It is well-settled that "[t]he constitutional right of freedom of speech does not extend its immunity to conduct which violates a valid criminal statute. Neither does the protection of the First Amendment extend to every use and abuse of the spoken and written word." State v. Leigh, 278 N.C. 243, 250, 179 S.E.2d 708, 712 (1971) (citations omitted).
2. Analysis
The First Amendment to the United States Constitution prohibits governmental restrictions of speech which are based upon its subject-matter or content. U.S. Const. amend. I ("Congress shall make no law ... abridging the freedom of speech"); Ashcroft v. ACLU, 535 U.S. 564, 573, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771, 780 (2002).
An individual may challenge a statute as overbroad on First Amendment grounds, even if the statute is constitutionally applied to *550 him. United States v. Stevens, 559 U.S. 460, 472-73, 130 S.Ct. 1577, 1586-87, 176 L.Ed.2d 435, 446-47 (2010). The "overbreadth doctrine" allows litigants to challenge a statute "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 840 (1973).
A law is impermissibly overbroad "on its face if it sweeps within its ambit not solely activity that is subject to governmental control, but also includes within its prohibition the practice of a protected constitutional right." State v. Hines, 122 N.C.App. 545, 552, 471 S.E.2d 109, 114 (1996) (citations and internal quotation marks omitted), disc. review improvidently allowed, 345 N.C. 627, 481 S.E.2d 85 (1997).
Where conduct, and not solely speech, is involved, "the overbreadth of [the] statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick, 413 U.S. at 615, 93 S.Ct. at 2918, 37 L.Ed.2d at 842. Neither "[m]ere potential for overbreadth" nor "hypothetical overbreadth" is sufficient to strike down an otherwise constitutional statute. Hest Techs., Inc. v. State ex rel. Perdue, 366 N.C. 289, 301-02, 749 S.E.2d 429, 438 (2012), cert. denied, - -- U.S. ----, 134 S.Ct. 99, 187 L.Ed.2d 34 (2013) ; Cinema I Video, Inc. v. Thornburg, 320 N.C. 485, 491, 358 S.E.2d 383, 385 (1987).
N.C. Gen.Stat. § 14-458.1 ("the Cyber-bullying Statute") prohibits the use of a computer or computer network to "[p]ost or encourage others to post on the Internet private, personal or sexual information pertaining to a minor" with "the intent to intimidate or torment a minor." N.C. Gen.Stat. § 14-458.1(a)(1)(d) (2013). At a pretrial hearing on Defendant's motion to dismiss, the trial *343 court determined the Cyber-bullying Statute "regulate[s] intentional conduct, not the content of speech."
Whether the North Carolina Cyber-bullying Statute prohibits conduct, speech, or some combination of the two has not yet been addressed by our appellate courts. At the pretrial hearing on Defendant's motion to dismiss, the State argued the Cyber-bullying Statute does not criminalize protected speech. The State contends this statute is analogous to the North Carolina Harassing Telephone Calls statute, which criminalizes making repeated telephone calls "for the purpose of abusing, annoying, threatening, terrifying, harassing or embarrassing any person at the called number[.]" N.C. Gen.Stat. § 14-196(a)(3) (2013). This Court previously addressed the constitutionality of the Harassing Telephone Calls statute on First Amendment grounds.
*551 In State v. Camp, this Court determined N.C. Gen.Stat. § 14-196(a)(3) prohibited conduct, not speech, because it was directed at "using telephones to annoy, offend, terrify or harass others and not directed at prohibiting the communication of thoughts or ideas." 59 N.C.App. 38, 42, 295 S.E.2d 766, 768, appeal dismissed and disc. review denied, 307 N.C. 271, 299 S.E.2d 216 (1982). This Court held "[t]his conduct is not protected by the First Amendment and, therefore, [N.C. Gen.Stat. § ] 14-196(a)(3) which prohibits such unprotected conduct is not unconstitutionally overbroad." Id. at 43, 295 S.E.2d at 769.
Defendant argues while the Harassing Telephone Calls statute is silent concerning the content of the telephone communications prohibited, the Cyber-bullying Statute prohibits the posting of "private, personal, or sexual information pertaining to a minor." N.C. Gen.Stat. § 14-458(a)(1)(d). This argument overlooks precisely what the Cyber-bullying Statute punishes.
The United States Supreme Court held a regulation of speech which appears to be content-based on its face will be deemed content-neutral, if motivated by a permissible content-neutral purpose. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-49, 106 S.Ct. 925, 928-30, 89 L.Ed.2d 29, 37-38 (1986). See also Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661, 675 (1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").
The Cyber-bullying Statute punishes the act of posting or encouraging another to post on the Internet with the intent to intimidate or torment. Like the telephone, the Internet can also be used as an instrumentality for communication. However, its use for sharing thoughts and ideas does not prevent the Internet from also being used as a mechanism for individuals to engage in harassing or tormenting conduct. Thorne v. Bailey, 846 F.2d 241, 243 (4th Cir.) (citation omitted) ("Harassment is not communication, although it may take the form of speech."), cert. denied, 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 569 (1988).
In his brief, Defendant argues he was "prosecuted for the content of his Facebook comments." The text of the Cyber-bullying Statute makes clear this assertion was not the case. Defendant could not have been convicted under the Cyber-bullying Statute absent proof by the State of the requisite mens rea to commit the crime of cyber-bullying.
It was not the content of Defendant's Facebook comments that led to his conviction of cyber-bullying. Rather, his specific intent to use those comments and the Internet as instrumentalities to intimidate or *552 torment Dillion resulted in a jury finding him guilty under the Cyber-bullying Statute.
The Cyber-bullying Statute is not directed at prohibiting the communication of thoughts or ideas via the Internet. It prohibits the intentional and specific conduct of intimidating or tormenting a minor. This conduct falls outside the purview of the First Amendment. Camp, 59 N.C.App. at 42, 295 S.E.2d at 768-69. See also In re Clark, 303 N.C. 592, 605, 281 S.E.2d 47, 56 (1981) ("A statute is not overbroad when it punishes, prohibits, or inhibits ... conduct which is not constitutionally protected."); Leigh, 278 N.C. at 250, 179 S.E.2d at 712 ("When a course of conduct has been otherwise properly declared illegal, *344 there is no abridgement of freedom of speech because the illegal conduct is initiated or carried out by the spoken word.").
To the extent the Cyber-bullying Statute touches upon or regulates some aspects of some speech, the burden on speech and expression is merely incidental. See Hest Techs., Inc., 366 N.C. at 300, 749 S.E.2d at 437 ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."). "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678-79, 20 L.Ed.2d 672, 679-80 (1968).
Under O'Brien, regulation of conduct which incidentally burdens speech
is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
Id. at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680.
Here, the General Assembly made clear the intent of the Cyber-bullying Statute was to protect children from the harmful effects of bullying and harassment, and prevent disclosure of private, personal, or sexual information. See Act of June 30, 2009, ch. 551, § 1, 2009 N.C. Sess. Laws 1510, 1510-1511; N.C. Gen. Stat. § 115C407.15, et. seq. The *553 government has a substantial interest in the protection of children from the psychological and emotional harm of cyber-bullying.
In July 2014, the New York Court of Appeals issued an opinion examining a challenge to a cyber-bullying statute on First Amendment grounds. The Albany County statute defined "cyber-bullying" as
any act of communicating or causing a communication to be sent by mechanical or electronic means, including posting statements on the internet or through a computer or email network, disseminating embarrassing or sexually explicit photographs; disseminating private, personal, false or sexual information ... with the intent to harass, annoy, threaten, abuse, taunt, intimidate, torment, humiliate, or otherwise inflict significant emotional harm on another person.
People v. Marquan M., 24 N.Y.3d 1, 994 N.Y.S.2d 554, 19 N.E.3d 480, 484 (2014).
In a 5-2 opinion, the Albany County cyber-bullying statute was struck down. The County had conceded "the text of the statute [was] too broad and that certain aspects of its contents encroach[ed] on recognized areas of protected free speech," which required it to be analyzed under a strict scrutiny standard. Id. , 994 N.Y.S.2d 554, 19 N.E.3d at 486-87. The New York court held while the statute "was motivated by the laudable public purpose of shielding children from cyber-bullying," the language of the statute "embrac [ed] a wide array of applications that prohibit types of protected speech far beyond the cyberbullying of children." Id. , 994 N.Y.S.2d 554, 19 N.E.3d at 486, 488. The New York court held the Albany County cyber-bullying statute was unconstitutionally overbroad because
[o]n its face, the law covers communications aimed at adults, and fictitious or corporate entities, even though the county legislature justified passage of the provision based on the detrimental effects that cyberbullying has on school-aged children.... [T]he law includes every conceivable form of electronic communication, such as telephone conversations, a ham radio transmission or even a telegram.
Id. , 994 N.Y.S.2d 554, 19 N.E.3d at 486.
The North Carolina Cyber-bullying Statute does not suffer the same fatal defects as the Albany County cyber-bullying statute. As explained above, any incidental restriction on speech in the North Carolina statute is no greater than necessary. The statute only prohibits disclosure *554 of "private, personal, or sexual information pertaining to the minor" on the Internet with the specific intent to intimidate or torment a minor. The statute *345 does not prohibit any other speech or communication on the Internet outside of this context.
The Cyber-bullying Statute serves purposes and regulates conduct entirely unrelated to speech. See Thorne, 846 F.2d at 244 (holding harassing telephone calls statute was not unconstitutionally overbroad because it sought to "protect citizens from harassment in an even-handed and neutral fashion" and was "not a censorial statute, directed at any group or viewpoint").
Defendant has failed to meet his burden of showing real and substantial overbreadth in the statute. Broadrick, 413 U.S. at 615-16, 93 S.Ct. at 2918, 37 L.Ed.2d at 842 ("[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied."). The Cyber-bullying Statute regulates volitional and malicious conduct. Any burdens it imposes on speech or expression are merely incidental. The First Amendment does not prohibit restrictions directed at conduct from imposing incidental burdens on speech. Hest Techs., Inc., 366 N.C. at 303, 749 S.E.2d at 439. This argument is overruled.
B. Void for Vagueness
Defendant argues the Cyber-bullying Statute is unconstitutionally vague on its face. Defendant contends the statute (1) fails to give adequate notice of the criminal speech; (2) creates a risk the statute will be enforced in an arbitrary or discriminatory manner; and, (3) chills constitutionally protected speech.
Unlike the "overbreadth doctrine," which creates an exception to the traditional standing requirement, a person whose conduct is clearly proscribed cannot challenge a statute for vagueness as applied to the conduct of others. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650, 669 (2008) ; Broadrick, 413 U.S. at 612, 93 S.Ct. at 2915-16, 37 L.Ed.2d at 840. "[A] party receiving fair warning, from the statute, of the criminality of his own conduct is not entitled to attack the statute on the ground that its language would not give fair warning with respect to other conduct." State v. Nesbitt, 133 N.C.App. 420, 424, 515 S.E.2d 503, 506-07 (1999).
Defendant acknowledged at oral argument he failed to argue both in his motion to dismiss and at the pretrial hearing that the Cyber-bullying Statute was unconstitutionally vague as applied to him. A constitutional issue not raised and passed upon by the trial court below will not be *555 considered for the first time on appeal. State v. Jones, 242 N.C. 563, 564, 89 S.E.2d 129, 130 (1955). Because Defendant did not raise an "as-applied" argument at trial, it is not properly preserved as an argument before this Court on appeal.
In his brief and at oral argument, Defendant requested this Court invoke Rule 2 of the North Carolina Rules of Appellate Procedure "to prevent manifest injustice." Under Rule 2, this Court may suspend the appellate rules in order "[t]o prevent manifest injustice to a party." N.C.R.App. P. 2.
Our Supreme Court has addressed the appropriateness of invoking Rule 2 on many occasions. " Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances. " State v. Hart, 361 N.C. 309, 315-316, 644 S.E.2d 201, 205 (2007) (citations and quotation marks omitted) (emphasis supplied). "[T]he exercise of Rule 2 was intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions. " Id. at 316, 644 S.E.2d at 205 (citations and internal quotation marks omitted) (emphasis supplied).
Nothing in either the record or either party's brief demonstrates "exceptional circumstances" sufficient to justify suspending or varying the rules in order to prevent "manifest injustice" to Defendant. Id. at 315, 644 S.E.2d at 205. Defendant posted several derogatory comments about Dillion, a minor, on Facebook. He did not attempt at trial to show he did not receive fair warning that his particular conduct was proscribed by the *346 statute. Defendant failed to argue the Cyber-bullying Statute was unconstitutionally vague as applied to him. In the exercise of our discretion, we decline to invoke Rule 2 to reach the merits of Defendant's unpreserved unconstitutional as-applied argument. This argument is dismissed.
Since we dismissed Defendant's unpreserved "as-applied" challenge to the Cyber-bullying Statute, Defendant lacks standing to challenge the statute on the grounds that it is unconstitutionally vague on its face. This argument is also dismissed.
C. Defendant's Motion to Dismiss for Insufficient Evidence
Defendant argues the trial court erred by denying his motion to dismiss the charge at the close of all the evidence. He asserts insufficient evidence was presented to show he posted "private, personal, or *556 sexual information" about Dillion. Defendant's motion to dismiss was based upon other grounds. Defendant failed to preserve this argument for appeal.
1. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo. " State v. Smith, 186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).
A motion to dismiss based on insufficiency of the evidence to support a conviction must be denied if, when viewing the evidence in the light most favorable to the State, there is substantial evidence to establish each essential element of the crime charged and that defendant was the perpetrator of the crime.
State v. Cody, 135 N.C.App. 722, 727, 522 S.E.2d 777, 780 (1999) (citation and internal quotation marks omitted).
2. Analysis
It is well-settled that "[i]n order to preserve an issue for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." State v. Gainey, 355 N.C. 73, 97, 558 S.E.2d 463, 479, cert. denied, 537 U.S. 896, 123 S.Ct. 182, 154 L.Ed.2d 165 (2002). When a defendant moves to dismiss the charges against him, he preserves the argument only on the grounds asserted at trial. See State v. Curry, 203 N.C.App. 375, 384-85, 692 S.E.2d 129, 137-38 (concluding defendant had waived fatal variance argument on appeal where his motion to dismiss at trial was on the grounds of insufficient evidence), appeal dismissed and disc. review denied, 364 N.C. 437, 702 S.E.2d 496 (2010) ; State v. Euceda-Valle, 182 N.C.App. 268, 272, 641 S.E.2d 858, 862 (holding where "defendant presents a different theory to support his motion to dismiss than that he presented at trial, this assignment of error is waived"), disc. review denied, 361 N.C. 698, 652 S.E.2d 923 (2007).
At trial, Defendant moved to dismiss on the grounds that the State presented insufficient evidence of his intent to intimidate or torment Dillion. After inquiry by the court, counsel for Defendant stated he "d[id] n't wish to be heard any further."
Defendant now seeks for the first time on appeal to argue the trial court erred by denying his motion to dismiss on the basis that the State *557 failed to present sufficient evidence Defendant's comments contained " private, personal, or sexual information" about Dillion. Defendant failed to make this argument in support of his motion to dismiss at trial. Because Defendant failed to properly preserve this issue, he has waived his right to appellate review. Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount.").
At oral argument and in his brief, Defendant acknowledged trial counsel's failure to preserve this argument. Defendant again requests that this Court invoke Rule 2 to reach the merits of his argument. Again, Defendant failed to show or satisfy his burden of demonstrating "exceptional circumstances" sufficient to justify suspending or varying the appellate rules in order to prevent "manifest injustice" to Defendant. Hart, 361 N.C. at 315, 644 S.E.2d at 205.
The State presented substantial evidence of the precise nature of the comments Defendant posted on Dillion's Facebook page. The *347 jury considered this evidence, after proper instructions from the trial court, and returned a verdict of guilty. In our discretion, we decline to invoke Rule 2. This argument is dismissed.
D. Detective Sykes' Testimony
Defendant argues the trial court abused its discretion by permitting Detective Sykes to testify, over objection, concerning screen shots of anything that appeared to him to be evidence of cyber-bullying.
1. Standard of Review
We review the admissibility of lay opinion testimony for abuse of discretion. State v. Buie, 194 N.C.App. 725, 730, 671 S.E.2d 351, 354 (2009). An abuse of discretion occurs when the trial court's decision "lacked any basis in reason or was so arbitrary that it could not have been the result of a reasoned decision." Williams v. Bell, 167 N.C.App. 674, 678, 606 S.E.2d 436, 439 (citation and quotation marks omitted), disc. review denied, 359 N.C. 414, 613 S.E.2d 26 (2005).
2. Analysis
Defendant argues the admission of Detective Sykes' testimony that he captured a screen shot from his computer's display "[w]henever [he] found anything that appeared to have been ... cyber-bullying" was inadmissible opinion testimony regarding Defendant's guilt. We disagree.
*558 Rule 701 of the Rules of Evidence provides lay witness testimony " in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen.Stat. § 8C-1, Rule 701 (2013).
Testimony elicited to assist the jury in understanding a law enforcement officer's investigative process is admissible under Rule 701. State v. O'Hanlan, 153 N.C.App. 546, 562-63, 570 S.E.2d 751, 761-62 (2002) (holding detective's testimony that he did not fully investigate rape with forensic analysis because victim survived and could identify defendant as her assailant was admissible under Rule 701 because (1) it was not offered as opinion on defendant's guilt; and (2) it was helpful to provide fact-finder with a clear understanding of his investigative process), cert. denied, 358 N.C. 158, 593 S.E.2d 397 (2004).
A law enforcement officer may not, however, give an opinion as to a defendant's guilt or innocence. See State v. Lawson, 159 N.C.App. 534, 542, 583 S.E.2d 354, 360 (2003) (noting officer testimony regarding the circumstances of traffic stop and reason for defendant's detention "was not invading the province of the jury as he was not commenting on the credibility of the witness"). Detective Sykes testified at trial as a lay witness. He provided the jury with information about what he found posted on Facebook concerning Dillion and Defendant, as well as the process of how he conducted his investigation.
When asked how he searched for comments concerning Dillion during his investigation, Detective Sykes explained he
went to the list of names that I had that I started with. I just started looking at their friends. Found some posts that were about Dillion. Then I went down the list and started looking at who had commented on it and I went to their page and looked at their page to see what they had said about Dillion. Whenever I found anything that appeared to have been to me cyber-bullying I took a screen shot of it.
The trial court overruled Defendant's objection and motion to strike this testimony. Detective Sykes nevertheless rephrased his response and stated, "[i]f it appeared evidentiary, I took a screen shot of it."
When viewed in context, Detective Sykes' testimony was not proffered as an opinion of Defendant's guilt. Detective Sykes' testimony was rationally based on his perception, and was helpful in presenting to the jury a clear understanding of his investigative process.
*559 O'Hanlan, 153 N.C.App. at 562-63, 570 S.E.2d at 761-62. His testimony was admissible under Rule 701. Defendant has failed to show the trial court abused its discretion in permitting Detective Sykes' testimony. This argument is overruled.
*348 E. Defendant's Statements About Christianity
Defendant argues the trial court erred by admitting his irrelevant statements about Christianity.
1. Standard of Review
"Whether evidence is relevant is a question of law, thus we review the trial court's admission of the evidence de novo. " State v. Kirby, 206 N.C.App. 446, 456, 697 S.E.2d 496, 503 (2010) (citation omitted). Whether to admit or exclude evidence is a decision which rests within the trial court's discretion. State v. Peterson, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007) (citation omitted), cert. denied, 552 U.S. 1271, 128 S.Ct. 1682, 170 L.Ed.2d 377 (2008). "[A] trial court's ruling will be reversed on appeal only upon a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." Kirby, 206 N.C.App. at 457, 697 S.E.2d at 503 (citation and internal quotation marks omitted).
2. Analysis
Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen.Stat. § 8C-1, Rule 401 (2013). Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." N.C. Gen.Stat. § 8C-1, Rule 403 (2013).
Defendant argues the trial court erred by allowing the following two Facebook comments to be read by Detective Sykes and published to the jury:
I like how [Dillion's cousin] uses the phrase "you need Jesus" in a very offhand manner. What about the billions of people that don't believe in Jesus the way you do? Do they need Jesus?
....
That's nice, but I'd like to point out that there's no empirical evidence that your Jesus ever existed. Take your *560 unfounded bulls-t out of here, the modern world can go without.
Defendant asserts the admission of these comments into evidence was irrelevant and highly inflammatory. We disagree.
Our Supreme Court held "evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact." State v. Jones, 336 N.C. 229, 243, 443 S.E.2d 48, 54 (citation and quotation marks omitted), cert. denied, 513 U.S. 1003, 115 S.Ct. 518, 130 L.Ed.2d 423 (1994).
The State argues these statements were relevant because they established the mens rea element of the Cyber-bullying Statute. Defendant made these comments in response to Dillion's cousin coming to his defense and posting: "[Y]ou need Jesus. That's my cousin your [sic] talking about.... I don't care what your issues are with him but you need to drop it."
Defendant's responses attacking Dillion's cousin's religion illustrated his desire to belittle or deter anyone from defending and standing up for Dillion. Defendant's comments were relevant to show his intent to intimidate or torment Dillion.
Defendant's comments about Christianity were also relevant to show the chain of events leading up to Dillion's mother contacting law enforcement.
Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if ... it forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.
State v. Agee, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (citation and internal quotation marks omitted).
Defendant argues the admission of his posts on Christianity created an opportunity for the jury to convict him on an improper, emotional basis. "[I]t is defendant's burden to show prejudice from the admission of evidence." State v. Oliver, 210 N.C.App. 609, 615, 709 S.E.2d 503, 508 (citation omitted), *349 disc. review denied, 365 N.C. 206, 710 S.E.2d 37 (2011). In order to show prejudice, a defendant must show that "a different result likely would have ensued had the evidence been excluded." Id. (citation and quotation marks omitted). *561 Substantial evidence was presented to support the jury's verdict and conviction of Defendant. The trial court weighed the probative value of this evidence against any prejudicial effect and properly ruled it was admissible. Defendant has failed to carry his burden to show "a different result likely would have ensued had the evidence been excluded." Id. (citation and quotation marks omitted). This argument is overruled.
IV. Conclusion
The Cyber-bullying Statute prohibits conduct, not speech. Any effect the statute has on speech or expression is merely incidental. Defendant has failed to carry his burden to show any real and substantial overbreadth of the Cyber-bullying Statute to invalidate it on First Amendment grounds.
Defendant failed to preserve his argument that the Cyber-bullying Statute was unconstitutionally vague as applied to him. Defendant has failed to carry his burden to show consideration of this argument on appeal is necessary to prevent "manifest injustice." In our discretion, we decline to invoke Appellate Rule 2. Defendant lacked standing to challenge the Cyber-bullying Statute as unconstitutionally vague on its face.
Defendant failed to preserve his argument that the State presented insufficient evidence to show he posted "private, personal, or sexual information" to support a conviction under the Cyber-bullying Statute. The State presented ample evidence of the nature of Defendant's comments. We decline to invoke Rule 2 to suspend the rules and address the merits of this argument.
Detective Sykes' lay opinion testimony regarding his investigative process was admissible under Rule 701. Defendant has failed to show the trial court abused its discretion.
Defendant's comments regarding Christianity were relevant to show his intent, and to establish the chain of events which culminated in Defendant's charge of cyber-bullying. In light of the other substantial evidence of guilt, Defendant failed to carry his burden to show prejudice by the admission of these comments.
Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in Defendant's conviction by the jury or in the trial court's judgment entered thereon.
NO ERROR.
Judges GEER and STROUD concur.