IN THE SUPREME COURT OF NORTH CAROLINA

No. 223PA15

Filed 10 June 2016

STATE OF NORTH CAROLINA

v.

ROBERT BISHOP

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 774 S.E.2d 337 (2015), finding no error after appeal from a judgment entered on 5 February 2014 by Judge G. Wayne Abernathy in Superior Court, Alamance County. Heard in the Supreme Court on 17 February 2016.

*Roy Cooper, Attorney General, by Kimberly N. Callahan, Assistant Attorney General, for the State.*

*Glenn Gerding, Appellate Defender, by James R. Grant, Assistant Appellate Defender, for defendant-appellant.*

*Ellis & Winters LLP, by C. Scott Meyers; and Eugene Volokh, pro hac vice, UCLA School of Law, for Electronic Frontier Foundation, amicus curiae.*

HUDSON, Justice.

On 9 February 2012, defendant Robert Bishop was arrested and charged with one count of cyberbullying under North Carolina's cyberbullying statute, N.C.G.S. § 14-458.1. Under that statute, it is "unlawful for any person to use a computer or computer network to . . . [p]ost or encourage others to post on the Internet private,

personal, or sexual information pertaining to a minor" "[w]ith the intent to intimidate or torment a minor." N.C.G.S. § 14-458.1(a)(1)(d) (2015). On 5 February 2014, defendant was convicted on that sole charge by a jury in the Superior Court in Alamance County. On appeal, the Court of Appeals concluded that the cyberbullying statute "prohibits conduct, not speech"; that any burden on speech is "merely incidental"; and that this "incidental" burden "is no greater than necessary" to further the State's "substantial" interest in protecting children from the harmful effects of bullying and harassment. *State v. Bishop*, ___ N.C. App. ___, ___, ___, 774 S.E.2d 337, 344-45, 349 (2015). We now conclude that N.C.G.S. § 14-458.1(a)(1)(d) restricts speech, not merely nonexpressive conduct; that this restriction is content based, not content neutral; and that the cyberbullying statute is not narrowly tailored to the State's asserted interest in protecting children from the harms of online bullying. Accordingly, we reverse the decision of the Court of Appeals and hold that the statute violates the First Amendment as applied to the states through the Fourteenth Amendment.

## I. FACTS AND PROCEDURAL BACKGROUND

During the 2011-2012 school year, defendant and Dillion Price were students at Southern Alamance High School. Starting in the fall of 2011, some of Price's classmates began to post negative pictures and comments about Price on Facebook, including on Price's own Facebook page. In September 2011, a male classmate posted on Facebook a screenshot of a sexually themed text message Price had inadvertently

sent him. Below that post, several individuals commented, including Price and defendant. Price accused the posting student of altering or falsifying the screenshot and threatened to fight him over the matter; defendant commented that the text was "excessively homoerotic" and accused others of being "defensive" and "pathetic for taking the [I]nternet so seriously."

At least two other Facebook postings with similar tone and attitude followed, all involving Price, defendant, and other commenters. Many of the messages that ensued included comments and accusations about each other's sexual proclivities, along with name-calling and insults.

Late one night in December 2011, Price's mother found him very upset in his room, crying, throwing things, and hitting himself in the head. She saw on his cellphone some of the comments and pictures that his classmates had posted. Fearing for his well-being and concerned that Price might harm himself, Price's mother contacted the police, who used undercover Facebook accounts to view the Facebook postings and take screenshots of postings relevant to the investigation.

On 9 February 2012, defendant was arrested and charged with one count of cyberbullying in violation of N.C.G.S. § 14-458.1. Some, but not all, of the other students involved in these discussions were also arrested or charged under the cyberbullying statute.[1]

---

[1] According to the trial transcript, it appears that six students were charged in connection with these online conversations.

Defendant was tried and convicted in district court, after which he appealed to the Superior Court in Alamance County for a trial de novo. In the superior court, defendant filed a pretrial motion to dismiss, contending that N.C.G.S. § 14-458.1(a)(1)(d) is unconstitutional under the First and Fourteenth Amendments. After hearing the matter on 24 April, the trial court denied defendant's motion in an order entered on 17 May 2013. Defendant's case came on for trial at the 3 February 2014 criminal session of the Superior Court in Alamance County, and on 5 February, defendant was convicted by a jury of one count of cyberbullying. Defendant appealed to the Court of Appeals.

At the Court of Appeals, defendant argued, *inter alia*, that the cyberbullying statute, specifically N.C.G.S. § 14-458.1(a)(1)(d), restricts speech protected under the First Amendment; that this restriction is content based; and that it sweeps too broadly to satisfy the exacting demands of strict scrutiny. In a unanimous opinion, the Court of Appeals rejected those arguments. Instead, applying de novo review, that court concluded that N.C.G.S. § 14-458.1(a)(1)(d) regulates conduct, not speech, and specifically that the statute "punishes the *act* of posting or encouraging another to post on the Internet *with the intent* to intimidate or torment" a minor. *Bishop*, ___ N.C. App. at ___, 774 S.E.2d at 343. The Court of Appeals also concluded that "[t]o the extent the Cyber-bullying Statute touches upon or regulates some aspects of some speech, the burden on speech and expression is merely incidental." *Id.* at ___, 774 S.E.2d at 344 (citing *Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 300, 749

-4-

S.E.2d 429, 437 (2012), *cert. denied*, ___ U.S. ___, 134 S. Ct. 99 (2013)). And regarding that "incidental" burden, the Court of Appeals concluded that it "is no greater than necessary" because the statute "only prohibits disclosure of 'private, personal, or sexual information pertaining to [a] minor' on the Internet with the specific intent to intimidate or torment a minor" and "does not prohibit any other speech or communication on the Internet outside of this context." *Id.* at ___, 774 S.E.2d at 344-45 (quoting N.C.G.S. § 14-458.1(a)(1)(d)). Partly on this basis, and after rejecting several other arguments defendant raised before that court, the Court of Appeals ultimately found no error in defendant's conviction under the cyberbullying statute. *See id.* at ___, 774 S.E.2d at 349. On 20 August 2015, we allowed defendant's petition for discretionary review.

## II. ANALYSIS

Here, defendant again contends that the cyberbullying statute, specifically N.C.G.S. § 14-458.1(a)(1)(d), is unconstitutional under the First Amendment, as incorporated and applied to the states through the Fourteenth Amendment, because it criminalizes protected speech based on its content, and because, in doing so, the law extends well beyond the government's asserted interest in protecting children from the harms caused by online bullying. The challenged provision makes it "unlawful for any person to use a computer or computer network" to "[p]ost or encourage others to post on the Internet private, personal, or sexual information pertaining to a minor" "[w]ith the intent to intimidate or torment a minor." N.C.G.S.

§ 14-458.1(a)(1)(d). For the reasons that follow, we hold that section 14-458.1 restricts speech, and not just nonexpressive conduct; that the restriction created is content based, not content neutral; and that the statute's scope is not sufficiently narrowly tailored to serve the State's asserted interest in protecting children from the harms resulting from online bullying. Accordingly, we conclude that N.C.G.S. § 14-458.1(a)(1)(d) violates the First Amendment. We therefore reverse the decision of the Court of Appeals.

**A. The Statute Burdens Speech, Not Just Nonexpressive Conduct.**

We must first determine whether N.C.G.S. § 14-458.1(a)(1)(d) restricts protected speech or expressive conduct, or whether the statute affects only nonexpressive conduct. Answering this question determines whether the First Amendment is implicated. *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 2539 (1989) (stating that conduct acquires First Amendment protection only when it "possesses sufficient communicative elements"). Yet this inquiry is not always easy or straightforward. On one hand, the Supreme Court of the United States has recognized that expressive conduct falls within the ambit of the First Amendment's protections—at least when that conduct is "inherently" expressive. *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 547 U.S. 47, 66, 126 S. Ct. 1297, 1310 (2006) ("Instead, we have extended First Amendment protection only to conduct that is inherently expressive[, such as flag burning]." (citing *Johnson*, 491 U.S. at 406, 109 S. Ct. at 2540)). On the other, that Court has also long held that otherwise

proscribable criminal conduct does not become protected by the First Amendment simply because the conduct happens to involve the written or spoken word. *See, e.g.*, *United States v. Alvarez*, ___ U.S. ___, ___, 132 S. Ct. 2537, 2544 (2012) (plurality opinion) (noting that "speech integral to criminal conduct" remains a category of historically unprotected speech); *accord Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 691 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." (citations omitted)); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 389, 112 S. Ct. 2538, 2546 (1992) ("[W]ords can in some circumstances violate laws directed not against speech but against conduct (a law against treason, for example, is violated by telling the enemy the Nation's defense secrets) . . . ."); *State v. Camp*, 59 N.C. App. 38, 42-43, 295 S.E.2d 766, 768-69 (opining that a statute barring use of a telephone to harass another person implicated conduct, not speech, and therefore did not violate the First Amendment), *appeal dismissed and disc. rev. denied*, 307 N.C. 271, 299 S.E.2d 216 (1982). Against this blurred doctrinal landscape, the line is not always bright between what is protected by the First Amendment and what is not.

Here, however, we are satisfied that N.C.G.S. § 14-458.1(a)(1)(d) applies to speech and not solely, or even predominantly, to nonexpressive conduct. As noted, the statute prohibits anyone, on threat of criminal punishment, from "[p]ost[ing] or

encourag[ing] others to post on the Internet [any] private, personal, or sexual information pertaining to a minor" "[w]ith the intent to intimidate or torment a minor." N.C.G.S. § 14-458.1(a)(1)(d). In contrast with the statute we upheld in *Hest*, which proscribed operating or placing into operation "an electronic machine or device" to conduct a sweepstakes, 366 N.C. at 292, 749 S.E.2d at 432, this statute outlawed posting particular subject matter, on the internet, with certain intent. The statute at issue in *Hest* regulated conduct, *id.* at 296, 749 S.E.2d at 434; the statute here regulates protected speech.

Posting information on the Internet—whatever the subject matter—can constitute speech as surely as stapling flyers to bulletin boards or distributing pamphlets to passersby—activities long protected by the First Amendment. *See, e.g.*, *Lovell v. City of Griffin*, 303 U.S. 444, 452, 58 S. Ct. 666, 669 (1938) ("The [First Amendment] is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest."); *see also Jamison v. Texas*, 318 U.S. 413, 416, 63 S. Ct. 669, 672 (1943) ("This right [to express one's views in an orderly fashion] extends to the communication of ideas by handbills and literature as well as by the spoken word." (citations omitted)). Such communication does not lose protection merely because it involves the "act" of posting information online, for much speech requires an "act" of some variety— whether putting ink to paper or paint to canvas, or hoisting a picket sign, or donning

a message-bearing jacket. *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 18-19, 26, 91 S. Ct. 1780, 1784-85, 1789 (1971) (holding that wearing a jacket with an antiwar vulgarity constituted protected speech, not merely conduct). Nor is such communication subject to any lesser protection simply because it occurs online. As the United States Supreme Court has made clear, the protections of the First Amendment extend in full not just to the Internet, *see Reno v. ACLU*, 521 U.S. 844, 870, 117 S. Ct. 2329, 2344 (1997) ("[O]ur cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]."), but to all new media and forms of communication that progress might make available, *see Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790, 131 S. Ct. 2729, 2733 (2011) ("And whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503, 72 S. Ct. 777, 781 (1952))). Accordingly, we conclude that N.C.G.S. § 14-458.1(a)(1)(d) of North Carolina's cyberbullying statute implicates the First Amendment because that provision restricts speech and not merely conduct.

## B. The Statute is Content Based.

Having concluded that N.C.G.S. § 14-458.1(a)(1)(d) limits speech, we now consider a second threshold inquiry: whether this portion of the cyberbullying statute is content based or content neutral. This central inquiry determines the level of

scrutiny we apply here. Content based speech regulations must satisfy strict scrutiny. Such restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, ___ U.S. ___, ___, 135 S. Ct. 2218, 2226 (2015) (citing *R.A.V.*, 505 U.S. at 395, 112 S. Ct. at 2549 and *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118, 112 S. Ct. 501, 508, 509 (1991)). In contrast, content neutral measures—such as those governing only the time, manner, or place of First Amendment-protected expression—are subjected to a less demanding but still rigorous form of intermediate scrutiny. The government must prove that they are "narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *McCullen v. Coakley*, ___ U.S. ___, ___, 134 S. Ct. 2518, 2529 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753 (1989)).

Until recently, it was unclear how a court should determine whether a speech restriction is content based or content neutral. In some cases, the Supreme Court of the United States has suggested that a reviewing court should focus on the intent behind the measure; in others, it has emphasized the plain text of the statute and how it would operate in practice. *Compare Ward*, 491 U.S. at 791, 109 S. Ct. at 2754 ("The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the

message it conveys." (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 295, 104 S. Ct. 3065, 3070 (1984))), *with McCullen*, ___ U.S. at ___, 134 S. Ct. at 2531 ("The Act would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383, 104 S. Ct. 3106, 3119 (1984))), *and R.A.V.*, 505 U.S. at 391, 112 S. Ct. at 2547 ("In its practical operation, moreover, the ordinance goes even beyond mere content discrimination, to actual viewpoint discrimination."). At times, the Court suggested both emphases within the course of a single opinion. *Compare Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-64, 131 S. Ct. 2653, 2663 (2011) ("On its face, [the challenged measure] enacts content- and speaker-based restrictions on the sale, disclosure, and use of prescriber-identifying information."), *with id.* at 565, 131 S. Ct. at 2663-64 ("Given the legislature's expressed statement of purpose, it is apparent that [the challenged measure] imposes burdens that are based on the content of speech and that are aimed at a particular viewpoint.").

Recently, however, in *Reed v. Town of Gilbert* that Court clarified that *several* paths can lead to the conclusion that a speech restriction is content based and therefore subject to strict scrutiny. This determination can find support in the plain text of a statute, or the animating impulse behind it, or the lack of any plausible

explanation besides distaste for the subject matter or message.[2]  In short, "[b]ecause strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Reed*, ___ U.S. at ___, 135 S. Ct. at 2228.

Here, it is clear that the cyberbullying statute is content based, on its face and by its plain text, because the statute "defin[es] regulated speech by [its] particular subject matter." *Id.* at ___, 135 S. Ct. at 2227.  The provision under which defendant

---

[2] As the Supreme Court of the United States summarized:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.  This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.  Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose.  Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

> Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content based regulations of speech: laws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys.  Those laws, like those that are content based on their face, must also satisfy strict scrutiny.

*Reed*, ___ U.S. at ___, 135 S. Ct. at 2227 (brackets, internal citations, and internal quotation marks omitted).

was arrested and prosecuted prohibits "post[ing] or encourag[ing] others to post . . . private, personal, or sexual information pertaining to a minor." N.C.G.S. § 14-458.1(a)(1)(d). The statute criminalizes some messages but not others, and makes it impossible to determine whether the accused has committed a crime without examining the content of his communication. The State's justification for the cyberbullying statute "cannot transform [this] facially content based law into one that is content neutral," *Reed*, ___ U.S. at ___, 135 S. Ct. at 2228, and we therefore reverse the Court of Appeals holding to the contrary.

## C. The Statute Fails Strict Scrutiny.

Because we have concluded that N.C.G.S. § 14-458.1(a)(1)(d) creates a content based restriction on protected speech, we can uphold this portion of the cyberbullying statute only if the State can demonstrate that it satisfies strict scrutiny. To do so, the State must show that the statute serves a compelling governmental interest, and that the law is narrowly tailored to effectuate that interest. *See, e.g.*, *id.* at ___, 135 S. Ct. at 2226.

That protecting children from online bullying is a compelling governmental interest is undisputed. While the State would normally be required specifically to "identify an 'actual problem' in need of solving," *Entm't Merchs. Ass'n*, 564 U.S. at 799, 131 S. Ct. at 2738 (quoting *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 822, 120 S. Ct. 1878, 1891 (2000)), and to "demonstrate with clarity that its 'purpose or interest is both constitutionally permissible and substantial' " *Fisher v. Univ. of*

*Tex. at Austin*, ___ U.S. ___, ___, 133 S. Ct. 2411, 2418 (2013) (quoting *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 305, 98 S. Ct. 2733, 2756 (1978) (plurality opinion)), here the State asserts, and defendant agrees, that the General Assembly has a compelling interest in protecting children from physical and psychological harm. We also note that the special status of minors is a subject for which the Supreme Court of the United States has shown a particular solicitude. That Court's long-standing recognition that "youth is more than a chronological fact," *Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S. Ct. 869, 877 (1982), has led it, on one hand, to recognize a compelling interest in the protection of minors, *see, e.g.*, *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S. Ct. 2829, 2836 (1989), and, on the other, to prohibit the imposition of the most serious criminal punishments for offenses committed before the age of eighteen, *see Roper v. Simmons*, 543 U.S. 551, 575, 125 S. Ct. 1183, 1198 (2005) (holding that the death penalty cannot be imposed for offenses committed by a juvenile); *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 2034 (2010) ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."); *Miller v. Alabama*, ___ U.S. ___, ___, 132 S. Ct. 2455, 2460 (2012) ("[M]andatory life without parole for those under the age of 18 at the time of their crimes [even for homicide offenses] violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" (quoting U.S. Const. amend. VIII)). Accordingly, in line with these consistent and converging strands of precedent, we reaffirm that the State has "a compelling interest

in protecting the physical and psychological well-being of minors." *Sable Commc'ns*, 492 U.S. at 126, 109 S. Ct. at 2836.

But just as the Court has shown a particular cognizance of the vulnerabilities of minors, so too has it shown a particular wariness of allowing strict scrutiny to become "strict in theory but feeble in fact." *Fisher*, ___ U.S. at ___, 133 S. Ct. at 2421. The State must show not only that a challenged content based measure addresses the identified harm, but that the enactment provides "the least restrictive means" of doing so. *McCutcheon v. FEC*, ___ U.S. ___, ___, 134 S. Ct. 1434, 1444 (2014) (plurality opinion) (citing *Sable Commc'ns*, 492 U.S. at 126, 109 S. Ct. at 2836). Given this "exacting scrutiny," *id.* at ___, 134 S. Ct. at 1444, it is perhaps unsurprising that few content based restrictions have survived this inquiry. *See Williams–Yulee v. Fla. Bar*, ___ U.S. ___, ___, 135 S. Ct. 1656, 1672 (2015) (upholding a provision that prohibited judicial candidates from personally soliciting campaign contributions but allowed them to raise funds in other ways and to conduct other campaign activities); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 38-39, 130 S. Ct. 2705, 2729-30 (2010) (upholding, in the interest of national security, a specific application of a statute barring the provision of material aid to foreign terrorist groups); *Burson v. Freeman*, 504 U.S. 191, 210-11, 112 S. Ct. 1846, 1857-58 (1992) (plurality opinion) (upholding a buffer zone around election sites as a measure to safeguard the right to vote freely and effectively); *see also Wood v. Moss*, ___ U.S. ___, ___, 134 S. Ct. 2056, 2061 (2014) (holding, in light of the "overwhelming importance" of "safeguarding the

President," that the Secret Service had not violated the clearly established rights of protestors by moving them farther away than supporters during an unexpected presidential stop).

With these principles in mind, we now turn to sub-subdivision 14-458.1(a)(1)(d) of the cyberbullying statute. Again, that provision makes it a criminal offense "for any person to use a computer or computer network to . . . [p]ost or encourage others to post on the Internet private, personal, or sexual information pertaining to a minor" "[w]ith the intent to intimidate or torment a minor." N.C.G.S. § 14-458.1(a)(1)(d). The central question then becomes whether this language embodies the least restrictive means of advancing the State's compelling interest in protecting minors from this potential harm.

We hold that it does not. At the outset, it is apparent that the statute contains no requirement that the subject of an online posting suffer injury as a result, or even that he or she become aware of such a posting. In addition, as to both the motive of the poster and the content of the posting, the statute sweeps far beyond the State's legitimate interest in protecting the psychological health of minors. Regarding motive, the statute prohibits anyone from posting forbidden content with the intent to "intimidate or torment" a minor. However, neither "intimidate" nor "torment" is defined in the statute, and the State itself contends that we should define "torment"

broadly to reference conduct intended "to annoy, pester, or harass."[3] The protection of minors' mental well-being may be a compelling governmental interest, but it is hardly clear that teenagers require protection via the criminal law from online annoyance.

The description of the proscribed subject matter is similarly expansive. The statute criminalizes posting online "private, personal, or sexual information pertaining to a minor." *Id.* Again, these terms are not defined by the statute. The State has suggested that we interpret this language by defining "private" to mean "[s]ecluded from the sight, presence, or intrusion of others," or "[o]f or confined to the individual." The State would then define "personal" as "[o]f or relating to a particular person," or "[c]oncerning a particular person and his or her private business, interests, or activities." And it would define "sexual" as "[o]f, relating to, involving, or characteristic of sex, sexuality, the sexes, or the sex organs and their functions," or "[i]mplying or symbolizing erotic desires or activity." While all of these definitions

---

[3] Similarly, the State encourages us to define "to intimidate" as "to make timid; fill with fear." While we need not, and do not, address a hypothetical statute limited to proscribing unprotected "true threats"—which the United States Supreme Court has defined as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 1548 (2003) (citations omitted)—we do note that such a statute might present a closer constitutional question. *Cf. Elonis v. United States*, ___ U.S. ___, ___, ___,135 S. Ct. 2001, 2004, 2012 (2015) (reversing the defendant's conviction under a federal statute that made "it a crime to transmit in interstate commerce 'any communication containing any threat . . . to injure the person of another,'" and for that reason, seeing no need to consider related First Amendment concerns (alteration in original) (quoting 18 U.S.C. § 875(c))).

are broad, the State's proposed definition of "personal" as "[o]f or relating to a particular person" is especially sweeping. Were we to adopt the State's position, it could be unlawful to post on the Internet any information "relating to a particular [minor]." Such an interpretation would essentially criminalize posting *any* information about *any* specific minor if done with the requisite intent.

Finally, we note that, while adding a mens rea requirement can sometimes limit the scope of a criminal statute, reading the motive and subject matter requirements in tandem here does not sufficiently narrow the extensive reach of the cyberbullying statute. Even under the State's proposed construction of the statutory terms, N.C.G.S. § 14-458.1(a)(1)(d) could criminalize behavior that a robust contemporary society must tolerate because of the First Amendment, even if we do not approve of the behavior. Civility, whose definition is constantly changing, is a laudable goal but one not readily attained or enforced through criminal laws.

In sum, however laudable the State's interest in protecting minors from the dangers of online bullying may be, North Carolina's cyberbullying statute "create[s] a criminal prohibition of alarming breadth." *United States v. Stevens*, 559 U.S. 460, 474, 130 S. Ct. 1577, 1588 (2010), *superseded by statute*, Pub. L. No. 111-294, § 3(a), 124 Stat. 3178 (2010) (narrowing the scope of the law at issue). Even under the State's interpretation of N.C.G.S. § 14-458.1, the statute prohibits a wide range of online speech—whether on subjects of merely puerile interest or on matters of public importance—and all with no requirement that anyone suffer any actual injury. In

general, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Entm't Merchs. Ass'n*, 564 U.S. at 799, 131 S. Ct. at 2738 (quoting *United States v. Playboy Entm't Grp.*, 529 U.S. at 818, 120 S. Ct. at 1889). Certainly, N.C.G.S. § 14-458.1(a)(1)(d) of the cyberbullying statute is not.

### III. CONCLUSION

For the foregoing reasons, we conclude that N.C.G.S. § 14-458.1(a)(1)(d) restricts speech, not merely nonexpressive conduct; that this restriction is content based; and that it is not narrowly tailored to the State's asserted interest in protecting children from the harms of online bullying. As such, the statute violates the First Amendment's guarantee of the freedom of speech. We therefore reverse the decision of the Court of Appeals finding no error in defendant's conviction for cyberbullying.

REVERSED.