CALABRIA, Judge.
*662 Patrick Mylett ("defendant") appeals from the trial court's judgment entered upon a jury verdict finding him guilty of conspiracy to commit harassment of a juror pursuant to N.C. Gen. Stat. § 14-225.2(a)(2) (2017).
*663 After careful review, we conclude that defendant received a fair trial, free from error.
I. Background
In August 2015, defendant and his twin brother ("Dan") were enrolled as students at Appalachian State University in Boone, North Carolina. On 29 August 2015, the brothers were involved in a fight at a fraternity party. Dan was subsequently charged with assault on a government official and intoxicated and disruptive behavior. On 31 March 2016, a Watauga County Superior Court jury returned a verdict finding Dan guilty of assault on a government official. After sentencing, defendant, Dan, and Dan's girlfriend ("Kathryn") loudly confronted six jurors about the verdict as they exited the courtroom and retrieved their belongings from the jury room. One juror reported the incident to the courthouse law enforcement officer, while another juror discussed the matter with the assistant district attorney.
On 19 April 2016, defendant was arrested and charged with six counts of harassment of a juror and one count of conspiracy to commit harassment of a juror. On 18 July 2016, the Watauga County grand jury returned bills of indictment formally charging defendant with these offenses. Dan and Kathryn were also separately charged and tried for the same offenses.
Defendant's trial commenced during the 30 January 2017 criminal session of Watauga County Superior Court with a hearing on several pretrial motions. Defendant filed pretrial motions to dismiss all charges as unconstitutional, arguing that the juror-harassment statute, N.C. Gen. Stat. § 14-225.2(a)(2), (1) violates the First Amendment, both on its face and as applied to his conduct; and (2) is unconstitutionally vague. Defendant also filed a pretrial motion in limine , pursuant to N.C. Rules of Evidence 404(b) and 802, requesting the trial court to order the State's "witnesses not to make any references to a fight or fights in which [defendant] or [Dan] participated." The trial court denied each of defendant's motions, but stated that the ruling on his motion in limine was "subject to being reopened based on the form of the question that is asked" at trial.
At trial, all six jurors testified as witnesses for the State. Following the State's presentation of evidence, defendant renewed his pretrial motions for dismissal and further moved to dismiss all charges for insufficient evidence. After the trial court denied his motions, defendant presented evidence, including his own testimony, and subsequently renewed his motions for dismissal at the close of all evidence.
*664 At the charge conference, defendant requested that the trial court provide the jury with a definition of "intimidate," which is not defined by statute. See N.C. Gen. Stat. § 14-225.2. The State opposed defendant's motion, *523 along with his proposed definitions. The trial court denied defendant's motion, and the jury was not provided with a definition of "intimidate."
On 2 February 2017, the jury returned verdicts finding defendant not guilty of six counts of juror harassment, but guilty of one count of conspiracy to commit juror harassment. The trial court sentenced defendant to 45 days in the custody of the Watauga County Sheriff, suspended his active sentence, and placed defendant on 18 months of supervised probation. The trial court also ordered defendant to serve 60 hours of community service, enroll in anger management, and obtain 20 hours of weekly employment.
Defendant appeals.
II. Constitutionality
On appeal, defendant argues that the trial court erred by denying his motions to dismiss on the basis of the constitutionality of the juror-harassment statute. Specifically, he asserts that N.C. Gen. Stat. § 14-225.2(a)(2) violates his First Amendment right to free speech and expression; and (2) is void for vagueness. We disagree.
A. Standard of Review
Constitutional challenges to statutes are reviewed de novo on appeal. N.C. Ass'n of Educators, Inc. v. State , 368 N.C. 777, 786, 786 S.E.2d 255, 262 (2016). Yet, even under de novo review, we begin with a presumption of validity. Id. "This Court presumes that statutes passed by the General Assembly are constitutional, and duly passed acts will not be struck unless found unconstitutional beyond a reasonable doubt[.]" Id. (citations omitted); see also Wayne Cty. Citizens Ass'n for Better Tax Control v. Wayne Cty. Bd. of Comm'rs , 328 N.C. 24, 29, 399 S.E.2d 311, 315 (1991) ("Where a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter.").
B. Implication of the First Amendment
In First Amendment challenges, the initial determination our Court must make is whether the statute in question- N.C. Gen. Stat. § 14-225.2(a)(2) in the instant case-triggers First Amendment protections. See State v. Bishop , 368 N.C. 869, 872, 787 S.E.2d 814, 817 (2016).
*665 To do so, we must determine whether N.C. Gen. Stat. § 14-225.2(a)(2) "restricts protected speech or expressive conduct, or whether the statute affects only nonexpressive conduct." Id. at 872, 787 S.E.2d at 817. While a seemingly simple task, this inquiry is not always straightforward or clear cut. The United States Supreme Court has long sought to balance the protection of expressive conduct-particularly when such conduct is "inherently" expressive-with the exclusion of otherwise proscribable criminal conduct that just so happens to involve written or spoken words. Compare Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc. , 547 U.S. 47, 66, 126 S.Ct. 1297, 1310, 164 L.Ed.2d 156, 175 (2006) (extending First Amendment protection "only to conduct that is inherently expressive"), with United States v. Alvarez , 567 U.S. 709, 717, 132 S.Ct. 2537, 2544, 183 L.Ed.2d 574, 587 (2012) (plurality opinion) (noting that "speech integral to criminal conduct" remains a category of historically unprotected speech).
Recently, in Bishop , the North Carolina Supreme Court examined the First Amendment implications arising from our cyberbullying statute. 368 N.C. 869, 787 S.E.2d 814. The statute in question, N.C. Gen. Stat. § 14-458.1(a)(1), prohibited individuals from "[p]ost[ing] or encourage[ing] others to post on the Internet [any] private, personal, or sexual information pertaining to a minor" "[w]ith the intent to intimidate or torment a minor." N.C. Gen. Stat. § 14-458.1(a)(1)(d) (2015). The Court, in holding the statute applied to expressive conduct and therefore implicated the First Amendment, reasoned the "statute outlawed posting particular subject matter, on the internet, with certain intent[,]" and consequently "appl[ied] to speech and not solely, or even predominantly, to nonexpressive conduct." Bishop , 368 N.C. at 873, 787 S.E.2d at 817. The Court ultimately held the statute unconstitutional on the basis of its violation of "the First Amendment's guarantee of the freedom of speech." Id. at 880, 787 S.E.2d at 822.
*524 In the instant case, N.C. Gen. Stat. § 14-225.2(a)(2) applies to nonexpressive conduct and does not implicate the First Amendment. N.C. Gen. Stat. § 14-225.2 provides, in part:
(a) A person is guilty of harassment of a juror if he:
(1) With intent to influence the official action of another as a juror, harasses, intimidates, or communicates with the juror or his spouse; or
(2) As a result of the prior official action of another as a juror in a grand jury proceeding or trial, threatens in any manner or in any place, or intimidates the former juror or his spouse.
*666 N.C. Gen. Stat. § 14-225.2(a) (emphasis added). When read in context, it is apparent this language applies to a defendant's conduct-threats and intimidations-directed at a particular class of persons-jurors-irrespective of the content. Unlike the language found in Bishop , which was a content-based restriction on internet posts, the language in this statute amounts to a restriction on conduct that is otherwise proscribable as criminal. See, e.g. , State v. Camp , 59 N.C. App. 38, 42-43, 295 S.E.2d 766, 768-69 (1982) (holding a statute barring the use of a telephone to harass another individual does not implicate the First Amendment because the statute proscribed conduct not speech); see also State v. Mazur , --- N.C. App. ----, 817 S.E.2d 919 (2018) (unpublished) (upholding the constitutionality of N.C. Gen. Stat. § 14-277.3A -North Carolina's stalking statute-because the statute did not implicate the First Amendment). Accordingly, we hold N.C. Gen. Stat. § 14-225.2(a)(2) proscribes conduct, not speech, and therefore does not implicate the First Amendment. We therefore overrule Defendant's argument.
C. Content-Neutral Restriction
However, even assuming arguendo N.C. Gen. Stat. § 14-225.2(a)(2) does implicate the First Amendment, the statute satisfies constitutional requisites.
The second threshold inquiry when examining the First Amendment validity of a statute is whether the portion of the statute limiting speech is "content based or content neutral." Bishop , 368 N.C. at 874, 787 S.E.2d at 818. The outcome of this determination governs the appropriate standard of scrutiny we must apply. If a statute is found to be content based, we apply strict scrutiny under which the restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert , --- U.S. ----, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236, 245 (2015). If, however, we find the restrictions to be content neutral, we apply the less demanding intermediate scrutiny. Bishop , 368 N.C. at 874, 787 S.E.2d at 818. Under intermediate scrutiny, the State must prove that the statute is "narrowly tailored to serve a significant governmental interest, and that [it] leave[s] open ample alternative channels for communication of the information." McCullen v. Coakley , 573 U.S. 464, 134 S.Ct. 2518, 2522, 189 L.Ed.2d 502, 507 (2014) (citation and quotation marks omitted).
The United States Supreme Court in Reed explained that
Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense *667 meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by a particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.
Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys. Those laws, like those that are content based on their face, must also satisfy strict scrutiny.
*525 Reed , --- U.S. at ----, 135 S.Ct. at 2226, 192 L.Ed.2d at 245 (citations and internal quotation marks omitted). As the North Carolina Supreme Court held, "[t]his determination can find support in the plain text of a statute, or the animating impulse behind it, or the lack of any plausible explanation besides distaste for the subject matter or message." Bishop , 368 N.C. at 875, 787 S.E.2d at 819. "Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." Reed , --- U.S. at ----, 135 S.Ct. at 2228, 192 L.Ed.2d at 247.
In the instant case, it is clear that the jury-harassment statute is content neutral, both on its face and by its purpose and justification. Taking each in turn, nothing on the face of the statute indicates the law applies to certain speech "because of the topic discussed or the idea or message expressed." Id. at ----, 135 S.Ct. at 2226, 192 L.Ed.2d at 245 ; see also Cahaly v. Larosa , 796 F.3d 399, 405 (4th Cir. 2015) (holding that South Carolina's anti-robocall statute was content-based on its face because it applied "to calls with a consumer or political message but [did] not reach calls made for any other purpose"). The statute here does not limit itself to any particular topic or idea. Rather, it applies equally to any idea if the idea is expressed in a manner that intimidates or threatens the specified jurors. The statute may also be justified without reference to the content of the regulated speech because the statute focuses on the form or manner of *668 the expression, not the ideas sought to be expressed. The statute does not prohibit a defendant from engaging in expressing his dissatisfaction with a jury or juror's particular vote even directly to the jurors; instead, it prohibits a defendant from expressing his or her message in a particular manner that threatens or intimidates the jurors. Therefore, assuming the statute does implicate the First Amendment, it amounts to a content-neutral restriction. The standard of scrutiny required to withstand a constitutional challenge is intermediate scrutiny.
D. The Statute Survives Intermediate Scrutiny
As discussed above, intermediate scrutiny requires that the statute in question be "narrowly tailored to serve a significant governmental interest." Ward v. Rock Against Racism , 491 U.S. 781, 796, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661, 678, 680 (1989) (internal quotation marks omitted) (reaffirming that "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so"). The United States Supreme Court explained in Ward that "the requirement of narrow tailoring is satisfied so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Id. at 799, 109 S.Ct. at 2758, 105 L.Ed.2d at 680 (citation and internal quotation marks omitted). The Court went on to note that "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 800, 109 S.Ct. at 2758, 105 L.Ed.2d at 681.
It is undeniable that the State has a substantial interest in protecting the sanctity of the constitutional right to a trial by jury through ensuring that jurors remain free from threats and intimidation directly resulting from their duty to serve. The statute's proscriptions apply only to the manner in which a defendant seeks to express their message-i.e. , the statute prohibits a defendant from engaging in expression only in so far as it intimidates or threatens those jurors specified under the statute. Nothing in the statute, or its application to defendant, suggests the regulation results in "a substantial portion of the burden on speech ... not serv[ing] to advance [the statute's] goals." Id. at 799, 109 S.Ct. at 2758, 105 L.Ed.2d at 681. Accordingly, even assuming N.C. Gen. Stat. § 14-225.2(a)(2) implicates the First Amendment, the statute is narrowly tailored to *526 serve the significant governmental interest of ensuring that jurors remain free from threats and intimidation. We therefore reject Defendant's arguments. *669 E. Void for Vagueness
Defendant next argues that the term "intimidate" renders N.C. Gen. Stat. § 14-225.2(a)(2) void for vagueness because the statute "fails to provide ... sufficient notice as to what constitutes intimidation [and] leaves open whether Defendant intentionally intimidated the juror, or merely whether a juror felt intimidated." We disagree.
A statute is unconstitutionally vague if it either "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application ...." In re Burrus , 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969) (citation and quotation marks omitted), aff'd sub nom. , McKeiver v. Pennsylvania , 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Yet, the Constitution does not impose "impossible standards of statutory clarity[.]" Id. So long as the statute provides fair notice of "the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly," constitutional requirements are satisfied. Id.
This Court has previously held that the word "intimidate" is not unconstitutionally vague. See State v. Hines , 122 N.C. App. 545, 552, 471 S.E.2d 109, 114 (1996), disc. review improvidently allowed , 345 N.C. 627, 481 S.E.2d 85 (1997). In Hines , we upheld the constitutionality of N.C. Gen. Stat. § 163-275(11), which makes it unlawful "to intimidate or attempt to intimidate" election officers in the discharge of their official duties. 122 N.C. App. at 552, 471 S.E.2d at 114. As here, that statute failed to define "intimidate." Id. However, this Court applied the well-established principle of statutory construction that undefined terms "should be given their plain meaning if it is reasonable to do so[,]" and defined "intimidate" as is "commonly defined as 'to make timid or fearful: inspire or affect with fear: frighten.' " Id. (quoting Websters Third New International Dictionary (1968) ). Thus, this Court concluded that by enacting N.C. Gen. Stat. § 163-275(11), "the legislature intended to prohibit anyone from frightening an individual while conducting election duties." Id.
Here, as in Hines , "the statute is specific enough to warn individuals of common intelligence of the conduct which is proscribed and is certainly capable of uniform judicial interpretation." Id. Therefore, we conclude that the undefined term "intimidate" does not render N.C. Gen. Stat. § 14-225.2(a)(2) void for vagueness and overrule Defendant's constitutional challenges.
*670 III. Sufficiency of the Evidence
Defendant next argues that the trial court erred by denying his motion to dismiss the conspiracy charge because the State presented insufficient evidence that defendant, Dan, and Kathryn reached "a meeting of the minds or an agreement to intimidate the jury." We disagree.
In reviewing a criminal defendant's motion to dismiss, the question for the trial court "is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), cert. denied , 531 U.S. 890, 121 S.Ct. 213, 148 L.Ed.2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "[T]he trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied , 515 U.S. 1135, 115 S.Ct. 2565, 132 L.Ed.2d 818 (1995).
"The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both." Fritsch , 351 N.C. at 379, 526 S.E.2d at 455.
*527 If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination , satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
Id. (citation and quotation marks omitted). We review the trial court's denial of a criminal defendant's motion to dismiss de novo . State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).
"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner." State v. Winkler , 368 N.C. 572, 575, 780 S.E.2d 824, 826-27 (2015) (citation and quotation marks omitted). Conspiracy may be proven through direct or circumstantial evidence. State v. Lawrence , 352 N.C. 1, 25, 530 S.E.2d 807, 822 (2000), cert. denied , 531 U.S. 1083, 121 S.Ct. 789, 148 L.Ed.2d 684 (2001). The *671 offense is generally "established by a number of indefinite acts, each of which, standing alone, might have little weight, but taken collectively, they point unerringly to the existence of a conspiracy." Id. (citation and quotation marks omitted).
"In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." Winkler , 368 N.C. at 575, 780 S.E.2d at 827 (citation and quotation marks omitted). "Nor is it necessary that the unlawful act be completed." State v. Morgan , 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991). "Indeed, the conspiracy is the crime and not its execution." State v. Whiteside , 204 N.C. 710, 712, 169 S.E. 711, 712 (1933) (emphasis added). Consequently, "no overt act is necessary to complete the crime of conspiracy." State v. Gibbs , 335 N.C. 1, 47, 436 S.E.2d 321, 347 (1993) (citation omitted). Rather, the offense
is complete upon "a meeting of the minds," when the parties to the conspiracy (1) give sufficient thought to the matter, however briefly or even impulsively, to be able mentally to appreciate or articulate the object of the conspiracy, the objective to be achieved or the act to be committed, and (2) whether informed by words or by gesture, understand that another person also achieves that conceptualization and agrees to cooperate in the achievement of that objective or the commission of the act.
State v. Sanders , 208 N.C. App. 142, 146, 701 S.E.2d 380, 383 (2010) (citations omitted). "Once a conspiracy has been shown to exist, the acts of a co-conspirator done in furtherance of a common, illegal design are admissible in evidence against all." Morgan , 329 N.C. at 658, 406 S.E.2d at 835.
In the instant case, the State presented substantial evidence that defendant, Dan, and Kathryn shared a "mutual, implied understanding" to commit juror harassment. Winkler , 368 N.C. at 575, 780 S.E.2d at 827 (citation and quotation marks omitted). During the sentencing hearing, defendant tensely paced in the hallway outside the courtroom. Defendant confronted each of the six remaining jurors about the verdict as they exited the courtroom after sentencing. More importantly, defendant's voice grew louder, and his tone more "threatening," as he became increasingly agitated with each confrontation.
Dan and Kathryn mirrored defendant's behavior when they joined him in the hallway. According to juror Kinney Baughman's testimony, when he exited the courtroom, "the whole Mylett family ... w[as]
*672 out there pacing, obviously upset[.]" After Baughman retrieved his belongings from the jury room, defendant "immediately engaged" him. Defendant told Baughman that he "had done wrong, that his brother was an innocent man[.]" Baughman attempted to walk away from the group, but quickly realized that he was walking in the wrong direction. When Baughman turned around, Kathryn "immediately ... pounced" on him, "pointing fingers" in Baughman's face while "screaming and yelling" similar accusations to those made by defendant.
"Ordinarily, the existence of a conspiracy is a jury question, and where reasonable minds could conclude that a meeting of *528 the minds exists, the trial court does not err in denying a motion to dismiss for insufficiency of the evidence." Sanders , 208 N.C. App. at 146, 701 S.E.2d at 383 (citation and quotation marks omitted). The parallel behavior exhibited by defendant, Dan, and Kathryn as they confronted the jurors is evidence that the parties mutually understood "the objective to be achieved" and implicitly agreed "to cooperate in the achievement of that objective or the commission of the act." Id. This evidence was sufficient to send the conspiracy charge to the jury.
Defendant also contends that the State presented insufficient evidence that he intended "to threaten or menace any juror." However, this argument challenges the denial of his motion to dismiss the charges of juror harassment, not conspiracy to commit that offense. As explained above, the law distinguishes "between the offense to be committed and the conspiracy to commit the offense." Whiteside , 204 N.C. at 712, 169 S.E. at 712 (emphasis added). Since the jury found defendant not guilty of all six counts of juror harassment, defendant is unable to show that, absent the alleged error, "a different result would have been reached at trial ...." N.C. Gen. Stat. § 15A-1443(a) (2017) ; see also State v. Stanley , 110 N.C. App. 87, 90, 429 S.E.2d 349, 350 (1993) (declining to address the defendant's challenge to the trial court's denial of his motion to dismiss where the "defendant was not convicted of first degree murder or otherwise prejudiced by the court's refusal to dismiss the charge"). Therefore, defendant's argument is moot, and we will not address it. See State v. Marshall , 304 N.C. 167, 168-69, 282 S.E.2d 422, 423 (1981) ("Since the jury at th[e sentencing] phase returned a verdict favorable to defendant, the questions which he attempts to raise are moot and will not be decided.").
IV. Evidentiary Challenges
Defendant next asserts several challenges to the trial court's evidentiary rulings. Specifically, he argues that the trial court erroneously (1)
*673 excluded a Facebook post proffered by defendant to impeach a juror-witness and (2) admitted the juror-witnesses' testimony about the fraternity party fight underlying Dan's trial, while excluding defendant's testimony about the same issue. We disagree.
A. Standard of Review
As a general rule, "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." State v. Ferguson , 145 N.C. App. 302, 307, 549 S.E.2d 889, 893, disc. review denied , 354 N.C. 223, 554 S.E.2d 650 (2001). However, "[w]hen preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed de novo ." State v. Johnson , 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011).
B. Facebook Post
During cross-examination, defendant attempted to introduce juror Kinney Baughman's Facebook post from 2 April 2016, in which Baughman shared an OpenCulture.com post describing a technique for opening a wine bottle with a shoe. Defendant proffered this evidence to impeach Baughman's testimony about his emotional distress resulting from the confrontation following Dan's trial. However, the State objected on the grounds that defendant failed to disclose it during pretrial discovery, as required by N.C. Gen. Stat. § 15A-905(a), and the trial court excluded the post.
N.C. Gen. Stat. § 15A-905 governs a criminal defendant's pretrial discovery obligations in superior court proceedings. Upon the State's motion, the trial court must
order the defendant to permit the State to inspect and copy or photograph books, papers, documents, photographs, motion pictures, mechanical or electronic recordings, tangible objects, or copies or portions thereof which are within the possession, custody, or control of the defendant and which the defendant intends to introduce in evidence at the trial.
N.C. Gen. Stat. § 15A-905(a) (2017).
On appeal, defendant contends that the trial court erroneously excluded Baughman's Facebook post because N.C. Gen. Stat. § 15A-905(a) does not apply to impeachment evidence. Defendant offers no case law supporting *529 this argument, and our research yields none. However, even assuming, arguendo , that the trial court erred by *674 excluding this evidence, defendant fails to explain how "absent the error a different result would have been reached at trial." Ferguson , 145 N.C. App. at 307, 549 S.E.2d at 893. Since defendant fails to meet his burden of showing prejudice, this argument is overruled.
C. Fraternity-Party Fight
Defendant next argues that the trial court erred by permitting the juror-witnesses to testify, over objection, about the fraternity-party fight underlying Dan's trial, while excluding defendant's testimony about the same events. Specifically, defendant contends that the jurors' testimony was improper character evidence and inadmissible hearsay. We disagree.
N.C. Gen. Stat. § 8C-1, Rule 404(b) is a "general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant subject to but one exception [.]" State v. Coffey , 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). Under Rule 404(b), such evidence must be excluded "if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." Id.
Contrary to defendant's arguments at trial and on appeal, evidence of the fraternity-party fight was not introduced for any improper purpose under Rule 404(b). As the trial court recognized in ruling on defendant's motion in limine , it would have been nearly impossible to exclude all evidence of the fight underlying Dan's trial. Indeed, this precipitating event "forms part of the history" of defendant's interaction with the juror-witnesses. State v. Agee , 326 N.C. 542, 547, 391 S.E.2d 171, 174 (1990) (citation and quotation marks omitted).
Similarly, the jurors' testimony on this issue was not hearsay. "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c). To the limited extent that the jurors even testified about the fight, they did not recount out-of-court statements from Dan's trial, nor was the evidence offered to prove the truth of the matter asserted. Instead, the testimony was offered for the legitimate, non-hearsay purpose of proving the jurors' states of mind:
[THE STATE]: And what did you hear or see [defendant] do?
[ROSE NELSON]: Well, he asked me what if-or he said that he hoped that I could live with myself because I had convicted an innocent man, and then as I was making my *675 way to the stairs trying to get down the stairs, he was saying something about the crooked Boone police, and he hoped that I slept well.
Q. How would you describe the tone of voice he used?
A. To me it was very threatening.
Q. Why do you say that?
A. I guess because of being in the courtroom for the days that I was in the courtroom and listening to what the two young men had done prior to that.
...
Q. And you mentioned-what are you referring to when you say what you heard the two young men do prior to that?
A. I just felt like there was a lot of violence displayed and the whole reason that they were at, you know, in the situation that they were in and their whole demeanor during the whole trial.
Q. How would you describe [defendant]'s demeanor during the trial?
A. Very agitated.
...
Q. After these comments were made to you did you have any sort of physical reaction to it?
A. I did. I left the courtroom, went straight to my husband's work and I was literally shaking, cause I was nervous. I had never done that before and the fact of the matter that the gentlemen knew what I was driving, where I worked and just very-it just was unnerving to me to know that they had that kind of anger *530 in them and that they could possibly retaliate towards me.
Defendant contends that the trial court denied him an opportunity to testify about the fight and thus to rebut the implication that he committed an act of violence. However, unlike the jurors' testimony, the evidence that defendant sought to introduce was inadmissible hearsay:
*676 [DEFENSE COUNSEL]: How were you feeling emotionally?
[DEFENDANT:] I was distraught, I was confused, I was sad, upset, just a overwhelming waterfall of different emotions just taking over.
Q. Can you tell us why you felt that way?
A. I was shocked with the outcome because they had admitted he was spitting out blood and the officer admitted he didn't try to spit on him but I guess-
[THE STATE]: Objection.
THE COURT: Sustained.
(Emphasis added).
Unlike the jurors' testimony, defendant's statement that "the officer admitted he didn't try to spit on him" is inadmissible hearsay. See N.C. Gen. Stat. § 8C-1, Rule 801(c). In his brief, defendant explains that he offered this evidence "to rebut the allegations and show that he and his brother were victims"-i.e. to prove the truth of the matter asserted. Accordingly, unlike the juror-witnesses' testimony on the matter, defendant's testimony regarding the fight was inadmissible hearsay. Therefore, the trial court properly admitted the former and excluded the latter.
V. Jury Instructions
Defendant's final argument is that the trial court erred by denying his request for a jury instruction on the definition of "intimidate." We disagree.
It is the duty of the trial court "to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime." State v. Bogle , 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "Failure to instruct upon all substantive or material features of the crime charged is error." Id. However, "[i]t is not error for the court to fail to define and explain words of common usage and meaning to the general public." S. Ry. Co. v. Jeffco Fibres, Inc. , 41 N.C. App. 694, 700, 255 S.E.2d 749, 753, disc. review denied , 298 N.C. 299, 259 S.E.2d 302 (1979).
Since there is no specific pattern jury instruction for N.C. Gen. Stat. § 14-225.2(a)(2), the State submitted a proposed special jury instruction. At the charge conference, defendant contended that the State's proposed instruction was "vague" and would therefore "make it tough for the jury" unless the trial court also provided a definition of the term "intimidate." Defendant submitted two proposed definitions, which *677 would have required the State to prove either: (1) that the defendant means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals; or (2) that the defendant menaced and made coercive statements to the juror, or otherwise threatened in an especially malignant or hostile manner, and that he intended to do so. The State opposed defendant's proposed definitions as unnecessary and contrary to law, and the trial court denied his request.
Defendant contends that the trial court's failure to provide a "legally sufficient" definition of "intimidate" likely confused the jury. However, as explained above, "intimidate" is a word of common usage that may be reasonably construed according to its plain meaning. Hines , 122 N.C. App. at 552, 471 S.E.2d at 114 ("Undefined words in a statute should be given their plain meaning if it is reasonable to do so."). Since "intimidate" has a common meaning amongst the general public, the trial court was not required to define the term for the jury. See S. Ry. Co. , 41 N.C. App. at 700, 255 S.E.2d at 753-54 (determining that "by reason of," "arising out of," and "incidental to" are "phrases of common usage" that required no "specific definition and explanation" where "the meaning of the terms as were used in the jury instructions was clear and should have been understood by the jury"); State v. Geer , 23 N.C. App. 694, 696, 209 S.E.2d 501, 503 (1974) (concluding that the trial court did not err by failing to define "flight" in its instructions to the *531 jury, where the word "was being used in its common, everyday sense").
VI. Conclusion
N.C. Gen. Stat. § 14-225.2(a)(2) prohibits nonexpressive conduct, unprotected speech. The statute provides fair notice of the conduct it condemns-threatening or intimidating former jurors as a result of their service-and does not allow for arbitrary enforcement. Accordingly, N.C. Gen. Stat. § 14-225.2(a)(2) is neither unconstitutionally overbroad nor void for vagueness. Furthermore, the State presented sufficient evidence from which a reasonable juror could conclude that defendant, Dan, and Kathryn conspired to commit juror harassment. Therefore, the trial court did not err by denying defendant's motions to dismiss.
Even if the trial court erred in excluding the Facebook post proffered to impeach a juror-witness, defendant fails to establish prejudice. The jurors' testimony regarding the fraternity-party fight was neither improper character evidence nor inadmissible hearsay, while defendant's testimony on the matter was properly excluded as hearsay. Finally, the trial court did not err by failing to define "intimidate" for the jury because the term is one of common usage and meaning.
*678 NO ERROR.
Judge ZACHARY concurs.
Chief Judge McGEE dissents by separate opinion.